**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| 4-M ENTERPRISES, INC.,<br>a corporation;<br>6-M HOSPITALITY GROUP, INC.,<br>a corporation;<br>ANAOLI LLC,<br>a limited liability company;<br>LM MICHIGAN LLC,<br>a limited liability company;<br>LM CATERING LLC,<br>a limited liability company;<br>ELATE LLC,<br>a limited liability company;<br>81 WACKER LLC,<br>a limited liability company;<br>5420 LM CLARK LLC,<br>a limited liability company;<br>LM RESTAURANT GROUP LLC,<br>a limited liability company;<br><br>    PLAINTIFFS,<br><br>v.<br><br>SOCIETY INSURANCE,<br>a Mutual Company,<br><br>    DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:21-cv-04368<br><br>Hon. Edmond E. Chang |

**<u>AMENDED COMPLAINT AT LAW AND FOR DECLARATORY JUDGMENT</u>**

NOW COME Plaintiffs 4-M ENTERPRISES, LLC, 6-M HOSPITALITY GROUP.

INC, ANAOLI LLC, LM MICHIGAN LLC, LM CATERING LLC, ELATE LLC, 81

WACKER LLC, 5420 LM CLARK LLC, and LM RESTAURANT GROUP LLC (individually,

a "Plaintiff," collectively, "Plaintiffs"), by and through its attorneys Gardiner Koch Weisberg

& Wrona and for their Amended Complaint at Law and for Declaratory Judgment against

Defendant Society Insurance ("Society") allege:

## INTRODUCTION

1.      Plaintiffs are owners and operators of restaurants, bars, and taverns in Chicago and its surrounding suburbs whose ordinary business operations have been interrupted—through no fault of their own—by the spread of the novel coronavirus ("COVID-19"). These interruptions present an existential threat to these small, local businesses that employ hundreds—perhaps thousands—of Illinoisans. To protect their businesses from situations beyond their control that pose a threat to their livelihoods, such as COVID-19, Plaintiffs obtained business interruption insurance from Society. In blatant breach of its voluntarily assumed obligation to insure Plaintiffs in exchange for premium payments, Society denied Plaintiffs' COVID-19 business interruption claims. Indeed, Society denied the claims without any meaningful coverage investigation.

2.      Plaintiffs bring this action against Society for refusing to abide by the terms of the commercial Business Owners insurance policy Society drafted and issued to Plaintiffs, when it rejected Plaintiffs' valid claims for lost business income because of "necessary suspensions" of their operations due to COVID-19.

3.      Society markets itself as offering broad "best-in-class" coverage and insurance brokers selling policies to potential Society policyholders touted Society as offering broader coverage than its competitors.

4.      On March 15, 2020, during the term of the policies Society issued to Plaintiffs and as COVID-19 spread throughout the State of Illinois, Illinois Governor Pritzker issued an order interrupting ordinary business operations at all restaurants, bars, and movie theaters in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. The March 15 and March 20 orders are hereinafter collectively referred to as the "Business Interruption Orders."

5.      As a result of COVID-19, Plaintiffs have been forced to halt their ordinary operations, resulting in substantial lost revenues and forcing many Plaintiffs to furlough or lay off the majority of their employees. Although restaurants are able to sell food on a carry-out or delivery basis, Plaintiffs' ordinary operations have been severely interrupted, including by the loss of alcohol and beverage sales that accompany sit-in service. Faced with the Sophie's choice COVID-19 presented them, many Plaintiffs determined that it would be even more of an interruption to their ordinary business—and create even more losses—to offer such carry-out or delivery options, forcing them to suspend operations completely.

6.      Despite Society's express promise to cover Plaintiffs' business interruption losses due to dangerous physical conditions like COVID-19, Society issued blanket denials to Plaintiffs for any losses related to COVID-19. Indeed, such denials often came within hours of receiving Plaintiffs' claims, without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.

7.      Indeed, on March 16, 2020—before Plaintiffs had submitted claims—the Society Insurance CEO circulated a memorandum to its "agency partners," prospectively concluding that Society's policies would likely not provide coverage for losses due to "alteration[s] in business operations" because of COVID-19 (coronavirus). Email from Rick Parks dated March 16, 2020 (the "March 16 Email"), attached hereto as Exhibit A.

8.      To the extent Society has provided any reason to Plaintiffs for its categorical assertion that Plaintiffs' losses are not covered, it is based on the assertion that the "actual or alleged presence of the coronavirus," which led to the Business Interruption Orders that prohibited Plaintiffs from engaging in ordinary business operations, does not constitute "direct physical loss." *See* March 22 Letter attached hereto as Exhibit B.

9. Yet, Society's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in "physical loss or damage" is contrary to the law in Illinois. Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g., Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622, 625–26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

10. Moreover, unlike some commercial property policies available in the market, the policies Society sold do not exclude pandemic-related losses. Thus, Plaintiffs reasonably expected that the insurance Society sold them included coverage for physical loss and business interruption losses infectious diseases like COVID-19 cause.

11. If Society had wanted to exclude pandemic-related losses under the Plaintiffs' policies—as some insurers have attempted to do in other policies—it easily could have included an express exclusion. Instead, Society waited until after it collected Plaintiffs' premiums—and after Plaintiffs suffered catastrophic business income losses due to a pandemic—to try to limit its exposure on the back-end through its erroneous assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.

12. The fact that the insurance industry has created specific exclusions for pandemic related losses under similar commercial property policies undermines Society's assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property. If a virus could never result in a "physical loss" to property, there would be no need for such an exclusion.

13. Indeed, Society marketed its policies as providing broad, "best-in-class" coverage and collected substantial premiums for years from Plaintiffs based on these representations.

14.     Making matters worse, on March 27, 2020, Society's CEO sent a memo to all Society policyholders entitled, "A Message From our CEO on Pandemic Crisis." Memo from Rick Parks dated March 27, 2020 (the "March 27 Memo"), attached hereto as Exhibit C. In the memo, Parks knowingly misrepresented the coverages available under Society policies by citing pandemic event exclusions that do not exist in policies issued by Society. As Parks put it:

> Insurance has always identified and excluded coverage for loss events that are so large, or are so unpredictable, that they outstrip the capacity of the industry to fund losses, or even price the exposure accurately. Exclusion for acts of war, nuclear incidents and flood are part of insurance policies for these reasons. ***These are the same reasons that coverages for pandemic events are excluded***.

(emphasis added).

15.     There are no such exclusions for pandemic events in Society's policies.

16.     Upon information and belief, Society sent this memo in furtherance of a corporate strategy designed to intentionally mislead Society's policyholders about the relevant coverage terms in their policies and discourage policyholders from filing claims for losses arising from COVID-19.

17.     The March 27 Email also made clear that Society was not making coverage determinations based on the facts of the claim and the language Society included in its policies; rather, Society's coverage determinations were based on the purported financial impact on Society if it honored its own policy language. Ex. C ("The insurance industry combined does not have enough assets to fund these losses and still be able to meet past and future obligations.").

18.     In multiple communications with Society policyholders, Society has stated the policyholders should look to the government for a bailout to cover its losses, and not

Society's plain policy language. Simply put, Society put its own financial interests ahead of its policyholders' and taxpayers' interests, in violation of Illinois law.

19.     Thus, Society's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials—based on Parks' own words—appear to be driven by Society's desire to limit its own financial exposure, rather than to undertake—as Society is obligated to do—a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiffs in exchange for valuable premiums.

20.     As a result of Society's wrongful denial of coverage, Plaintiffs file this action for a declaratory judgment establishing that they are entitled to receive the benefit of the insurance coverage they purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

## PARTIES

21.     Plaintiff 4-M Enterprises, Inc. ("4-M") is incorporated and has its principal place of business in Illinois. The members of 4-M, George T. Mannos, Jr. and Thomas G. Mannos, are both citizens of Illinois. 4-M operates Exchequer Restaurant & Pub in Chicago. 4-M has a Business Owners Policy from Society Insurance, Policy No. BP19047791, which covered losses for occurrences at Exchequer Restaurant & Pub.

22.     Plaintiff 6-M Hospitality Group, Inc. ("6-M") is incorporated and has its principal place of business in Illinois. The members of 6-M, George T. Mannos, Jr., James Jacob Mannos, James D. Mannos, Steven G. Mannos, Thomas G. Mannos, and Christopher T. Mannos, are all citizens of the Illinois. 6-M operates 2Twenty2 Tavern in Chicago. 6-M has a Business Owners Policy from Society Insurance, Policy No. BP16024716-3.

23.     Plaintiff Anaoli LLC ("Anaoli") is an Illinois limited liability company, and has its principal place of business in Chicago, Illinois. Anaoli's sole member, Diana Davila

Boldin, is a resident and citizen of the State of Illinois. Anaoli operates Mi Tocaya Antojería in Chicago. Anaoli has Business Owners Policies from Society Insurance, Policy Nos. BP16033332, CA16033334, UM160336163, WC16033336.

24. Plaintiff LM Restaurant Group LLC ("LM Restaurant Group") is an Illinois limited liability company and has its principal place of business in Chicago, Illinois. The sole members of LM Restaurant Group, Stephan Outrequin and Nicole Quaisser Outrequin, are citizens of Illinois. LM Restaurant Group has Business Owners Policy from Society Insurance, Policy Nos. CAP577626, HOB577420, WC577422. LM Restaurant Group acts as the sole member for:

    a. LM Michigan LLC ("LM Michigan"), an Illinois limited liability company, with its principal place of business in Chicago, Illinois. LM Michigan operates Grant Park bistro in Chicago. LM Michigan has Business Owners Policies from Society Insurance, Policy Nos. BP19000556, CA19000559, CY19000560, UM19000562, WC19000561.

    b. LM Catering LLC ("LM Catering"), an Illinois limited liability company, with its principal place of business in Chicago, Illinois. LM Catering has Business Owners Policies from Society Insurance, Policy Nos. CAP581135 and ROP581134.

    c. Elate LLC ("Elate"), an Illinois limited liability company, with its principal place of business in Chicago, Illinois. Elate operated Troquet River North in Chicago, until the venue was closed in April 2020 due to COVID-19. Elate has Business Owners Policies from Society Insurance, Policy Nos. CAP576602, ROP576601, UXL576604, WC576603.

    d. 81 Wacker LLC ("81 Wacker"), an Illinois limited liability company, with its principal place of business in Chicago, Illinois. 81 Wacker operates Land and

Lake Kitchen in Chicago. 81 Wacker has Business Owners Policies from Society Insurance, Policy Nos. BP17001522, CA17001537, CY20002948, UM17001543, WC17033775.

e. 5420 LM Clark LLC, ("5420"), an Illinois limited liability corporation, with its principal place of business in Chicago, Illinois. 5420 operated Passerotto in Chicago, until the venue was closed in October 2020 due to COVID-19. 5420 held Business Owners Policies from Society Insurance, Policy Nos. BP18006822, CA18006824, CY18012441, WC18006826.

25. Defendant Society Insurance ("Society") is a mutual company engaged in the business of selling and providing property and casualty insurance to commercial entities, including restaurants, bars, grocery stores, convenience stores, medical clinics and artisan contractors, in Illinois and elsewhere. Society is a citizen of Wisconsin and maintains its principal place of business in Wisconsin.

## JURISDICTION & VENUE

26. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

27. This Court has personal jurisdiction over Society pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because Society has submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois. See 735 ILCS 5/2-209(1), (4), (7). In addition, Society exercises substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

8

28. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority event detailed below.

29. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiffs' claims occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

### A.    The Society Insurance Policies

30. In exchange for substantial premiums, Society sold commercial property insurance policies promising to indemnify Plaintiffs for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by a government order, during the relevant time period (each a "Policy" and collectively, the "Policies").

31. Each Policy was issued to Plaintiffs at their principal places of business in Illinois.

32. The relevant provisions setting forth the scope of coverage for business interruption losses are the same under each Policy. An example of a Policy is attached hereto as Exhibit D.

33. The Policies are an "all risk" policy that provides broad coverage for losses caused by any cause, unless expressly excluded.

34. The Policy does not purport to exclude losses from infectious diseases, viruses or pandemics. Thus, the all-risk Policies that Plaintiffs purchased cover COVID-19-caused business income losses.

9

35.     In addition to property damage losses, Society also agreed to "pay for the actual loss of Business Income" sustained by Plaintiffs "due to the necessary suspension" of Plaintiffs' operations during the period of business interruption caused by "by direct physical loss of or damage to covered property" at the insured's premises.

36.     With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities"; or (2) "that a part or all of the described premises is rendered untenantable if coverage for Business Income applies.

37.     "Business Income" is defined in relevant part under the Policies as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred" plus "continuing necessary operating expenses incurred."

### B.     The Plaintiffs' Losses Due to the Coronavirus Pandemic

38.     On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

39.     Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous.

40.     Infected individuals expel respiratory droplets containing COVID-19 that can range in size with some being very fine droplets or aerosol particles that contain the infectious virus. These droplets can linger in the air, attach to larger exhaled droplets or exposed mucous membranes, or attach to surfaces.

41.     The virus, according to a recent informational release from the CDC, actually physically transforms surfaces it touches into fomites, causing some degree of physical alteration to the surfaces.

42.     The virus can also transmit and linger in a building's filtration and HVAC system, causing a physical alteration to the HVAC system, and ambient air which can lead to coronavirus transmission from person to person.

43.     Plaintiffs all had multiple employees test positive for coronavirus throughout the time period of the pandemic and when coverage was active.

44.     Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

45.     Enclosed spaces with inadequate ventilation or air handling within which the concentration of exhaled respiratory fluids, especially very fine droplets and aerosol particles, can build-up in the air space. Even with the best attempts these fine droplets and aerosol particles can linger in the air space, physically altering the air present in an enclosed space, such as a restaurant.

46.     In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-07 on March 15, 2020 requiring that all bars, restaurants, and movie theaters close to the public beginning on March 16, 2020 and continuing through March 30, 2020. This order was extended—in various forms—though July 26, 2021. *See* Executive Order 2021-14.

47.     The continuous presence of COVID-19 on or around Plaintiffs' premises has created a dangerous condition and rendered their premises unsafe and unfit for their intended use and caused physical property damage or loss under the Policies. As described above, the physical surfaces were altered by the presence of COVID-19 into virus-transmitting vectors.

11

48. As a result of COVID-19, Plaintiffs have each suffered substantial Business Income losses. The covered losses the LM entities incurred and are owed under the Policies are increasing every day, but are expected to exceed Four Million Dollars ($4,000,000.00). The covered losses that the 6-M Hospitality group entities incurred and are owed under the Policies are increasing every day, but are expected to exceed Two Million Dollars ($2,000,000.00). The covered losses that the Anaoli entity incurred and are owed under the Policies are increasing every day, but are expected to exceed One Million Dollars ($1,000,000.00). As a result of these catastrophic losses, many of the Plaintiffs have been forced to furlough their workers and may have to close some or all of their locations permanently.

49. Throughout the period of coverage, the Plaintiffs use of their full restaurant space was restricted by Government Order, and are still restricted due to the COVID-19 virus.

50. Each of the Plaintiffs has substantially altered their business space to accommodate the changes that COVID-19 requires, which to reiterate are covered losses, including modifying their outside structures to be compatible for eating, providing plastic dividers, etc.,

51. Following the March 15, 2020 Business Interruption Order, Plaintiffs each submitted a claim to Society requesting coverage for their business interruption losses promised under the Policies.

52. Society has denied each of the Business Interruption Claims in writing.

## COUNT I: DECLARATORY JUDGMENT

53. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in Paragraphs 1–52 above.

54.     Each Policy is an insurance contract under which Society was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing the interruption of their ordinary business operations.

55.     Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

56.     Society has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the covered business losses related to novel coronavirus and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

57.     An actual case or controversy exists regarding Plaintiffs' rights and Society's obligations under the Policies to reimburse Plaintiffs for the full amount of losses Plaintiffs incurred in connection with Business Interruption Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

58.     Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring the following:

(a) Plaintiffs' losses incurred in connection with the novel coronavirus and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

(b) Society has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

(c) Society is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II: BREACH OF CONTRACT

59.     Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in Paragraphs 1–58 above.

60.     Each Policy is an insurance contract under which Society was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the necessary interruption of their businesses stemming from the COVID-19 pandemic.

61.     Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Society has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

62.     By denying coverage for any business losses incurred by Plaintiffs in connection with the novel coronavirus and the COVID-19 pandemic, Society has breached its coverage obligations under the Policies.

63.     As a result of Society's breaches of the Policies, Plaintiffs have sustained substantial damages for which Society is liable, in an amount to be established at trial.

## COUNT III: STATUTORY PENALTY FOR
## BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

64.     Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in Paragraphs 1–63 above.

65.     Upon receipt of the Business Interruption Order Claims, Society immediately denied the claims without conducting any investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. *See* 215 ILCS 5/154.6.

14

66. To discourage policyholders from even filing claims, Society, through its Chief Executive Officer Rick Parks, misled policyholders by citing a pandemic exclusion that does not exist in policies issued by Society in the March 27 Memo issued to all policyholders, in blatant violation of Illinois law that prohibits insurers from knowingly misrepresenting to their insureds relevant facts or policy provisions contained in policies they issued. *See id*.

67. Society's denials were vexatious and unreasonable.

68. Society's denials constitute "improper claims practices" under Illinois law—namely Society's (1) refusals to pay Plaintiffs' claims without conducting reasonable investigations based on all available information and (2) failure to provide reasonable and accurate explanations of the bases in its denials. *See* 215 ILCS 5/154.6 (h), (n).

69. Therefore, pursuant to 215 ILCS 5/155, Plaintiffs request that, in addition to entering a judgment in favor of Plaintiffs and against Society for the amount owed under the Policies at the time of judgment, the Court enter a judgment in favor of Plaintiffs and against Society for an amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff. *See* 215 ILCS 5/155.

70. Plaintiffs further request that the Court enter a judgment in favor of Plaintiffs and against Society in an amount equal to the attorneys' fees and costs incurred by Plaintiffs for the prosecution of this coverage action against Society, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that the Court:

A. Enter declaratory judgment on Count II of the Complaint in favor of Plaintiffs and against Society, declaring as follows:

    i.    Plaintiffs' losses incurred in connection with the novel coronavirus and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

    ii.    Society has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

    iii.    Society is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the necessary interruption of their businesses stemming from the COVID-19 pandemic.

B.    Enter judgment on Count II of the Complaint in favor of Plaintiffs and against Society and award damages for breach of contract in an amount to be proven at trial;

C.    Enter judgment on Count III of the Complaint in favor of Plaintiffs and against Society in the amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiffs are entitled to recover under the Policies, exclusive of costs; and (2) $60,000 per Plaintiff;

D.    Enter judgment in favor of Plaintiffs and against Society in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Society, pursuant to 215 ILCS 5/155, which amount to be established at the conclusion of this action;

E.    Award to Plaintiffs and against Society prejudgment interest, to be calculated according to law, to compensate Plaintiffs for the loss of use of funds caused by Society's wrongful refusal to pay Plaintiffs for the full amount in costs incurred in connection with the Business Interruption Claims.

F.    Award Plaintiffs such other, further, and additional relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated this 10th day of November, 2021.

GARDINER KOCH WEISBGER & WRONA
Attorneys for Plaintiffs

/s/ *Thomas G. Gardiner*
Thomas G. Gardiner

Thomas G. Gardiner (tgardiner@gkwwlaw.com)
John D. Scheflow (jscheflow@gkwwlaw.com)
Hamza Jaka (hjaka@gkwwlaw.com)
Gardiner Koch Weisberg & Wrona
53 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
(T): 312.362.0000
(F): 312.362.0440